

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:05CR00012 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JOANN YVONNE CARTER, | ) | |
| a.k.a. "Sweets" | ) | |
| | ) | By:  B. WAUGH CRIGLER |
| Defendant, | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned an Indictment charging defendant in Count One with willfully and knowingly attempting and or combining, conspiring, confederating and agreeing together with persons known and unknown to the Grand Jury, to commit the following offenses against the United States, to wit: to possess with intent to distribute and to distribute more than fifty grams of a mixture or substance containing a detectable amount of cocaine base, or "crack" cocaine, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), all in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

On August 2, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government.

At this hearing the defendant was placed under oath and testified that her full legal name is Joann Yvonne Carter, that she was born on July 11, 1978, and that she obtained a bachelor's degree.

The defendant stated that she can read, write, and understand the English language. The defendant stated that she was fully aware of the nature of the charges against her and the consequence of pleading guilty. The defendant further testified that she was not under the influence of alcohol, medicine, or any drug. Defendant stated that she had no other physical or mental condition which impaired her ability to understand the nature of the proceedings being held.

The defendant testified that she had received a copy of the Indictment pending against her and that she had fully discussed the charges therein, and her case in general, with her counsel. She also testified that she had read the plea agreement in its entirety and had discussed the plea agreement with her counsel before signing the agreement. She stated that she understood the terms of the agreement and that the document presented to the court set forth her agreement with the government in its entirety. The defendant specifically testified that she understood that under the terms of the agreement she was waiving any right to appeal or to collaterally attack her conviction or sentence and that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing. Defendant's counsel stated that he had reviewed each of the terms of the plea agreement with the defendant and was satisfied that she understood those terms.

The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises other than those contained in her agreement with the government, or made any assurances or threats to her in an effort to induce her plea. The defendant testified that she understood that the offense with which she is charged is a felony and that, if her plea is accepted, she will be adjudged guilty of that offense. Moreover, the defendant testified that she understood that she will be required to pay

a mandatory assessment of $100, and that at the discretion of the court, she may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant acknowledged that she consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from her possession or from her direct or indirect control. The defendant stated that she was waiving her right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant stated that she understood that she must submit to the government a complete and truthful financial statement revealing all her assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant also testified that she was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of her case.

The defendant was informed that the maximum possible penalty provided by law for Count One is life imprisonment and a $4,000,000 fine, together with supervised release. The defendant was also informed that the minimum mandatory sentence for Count One is ten years imprisonment, together with supervised release. The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her

counsel had discussed how the sentencing guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report had been prepared and both parties had been given an opportunity to challenge the reported facts and the application of the guidelines. She stated that she understood that the eventual sentence imposed may be different from any estimate her attorney has given her and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant stated that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the plea agreement, the government will recommend a three-level (3) reduction under USSG § 3E1.1(a) for acceptance of responsibility. The defendant also stated that she understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, she must provide such assistance in a manner set forth in the plea agreement. The defendant stated that she understood that a determination as to whether she had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant further stated that she understood that the government will not seek a sentence higher than recommended by the guidelines. The defendant stated that she knew that parole had been abolished and that if she is sentenced to prison she will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that she understood that she had the right to a trial by a jury, in

addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless she voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that she understood that if she is adjudged guilty of the charges against her, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel. The defendant testified that she understood the possible consequences of her plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept her plea of guilty to Count One of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived her right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offense charged is as follows:

Had this case proceeded to trial, the government would have proved by competent and admissible evidence, beyond a reasonable doubt, that the defendant committed acts that constitute a violation of Count One of the Indictment before the Court in this case, a violation of Title 21, United

States Code, Sections 841(b)(1)(A) and 846. Specifically, a portion of the government's evidence would have demonstrated that within the time period set forth in Count One of the Indictment, the defendant, Khalil Jihad-Labeeb Abdullah, Christopher Earl Tuten, and others conspired to distribute fifty grams, or more, of crack cocaine in Frederick and Warren counties, which are located in the Western District of Virginia.

A confidential informant would have testified that a controlled buy was made from Tuten on February 23, 2005, in Warren County, Virginia. That same day, investigators executed a search warrant on Tuten's Budget Inn Motel room and recovered 46 grams of crack cocaine, a Taurus .357 revolver, a R.G. Industries .22 caliber revolver, scales, and $2,000 in U.S. currency.

Investigators would have testified that while conducting surveillance of the Budget Inn Motel, Abdullah was seen departing from Tuten's room and drove away in a vehicle registered to the defendant. Abdullah was stopped by investigators and he agreed to provide information after acknowledging and waiving his Miranda rights. Abdullah stated that he and Tuten had been distributing crack cocaine in the Western District of Virginia for four weeks and each week distributed three to eight ounces of crack cocaine that was supplied by the defendant. Abdullah later stated to investigators that from about January 2005 through February 24, 2005 he and Tuten made twelve trips to acquire crack cocaine from the defendant. They distributed the crack cocaine from an individual's residence in Winchester, Virginia. On eleven of the twelve trips, they acquired one to one and a half ounces of crack cocaine from the defendant. On the last trip, Tuten acquired five ounces of crack cocaine. During the period of the conspiracy, Abdullah stated that he made ten to twenty sales of crack cocaine for Tuten.

On February 24, 2005, Tuten was interviewed by an ATF agent at Warren County Jail after

6

acknowledging and waiving his Miranda rights. Tuten stated that he and Abdullah had been distributing crack cocaine in the Western District of Virginia for six weeks and each week distributed eight to sixteen ounces of crack cocaine that was supplied by the defendant. Tuten placed a recorded telephone call to the defendant and they discussed acquiring four to eight ounces of crack cocaine from the defendant's source later that day. Tuten later stated to investigators that he and Abdullah purchased crack cocaine from the defendant on about ten occasions beginning on the last week of January up to the time of their arrest. Tuten stated that on each visit they collected two to three ounces of crack cocaine, except on the last visit when they collected four and a half ounces.

Investigators contacted the defendant at her Days Inn Motel room where she was arrested without incident. The defendant gave investigators consent to search her room and they recovered digital scales with cocaine residue, an original manufacturers box for a R.G. Industries .22 caliber revolver, and $1,800 in U.S. currency. The defendant later stated to investigators that she distributed crack cocaine to Tuten and Abdullah on four occasions over a two week period. The defendant stated that the first three transactions were for one to one and a half ounces of crack cocaine. However, the last transaction on February 22, 2005, was for four ounces of crack cocaine. The defendant further stated that Tuten was the primary distributor of crack cocaine and Abdullah distributed and transported to Tuten.

A witness would have identified Tuten and Abdullah and testified that the witness assisted them in distributing crack cocaine from the witness' residence on numerous occasions to individuals residing in Winchester, Middletown, and Front Royal, Virginia. The witness would have further testified that Tuten and Abdullah distributed a large amount of crack cocaine from the witness' residence. The witness would have also testified that Tuten and Abdullah introduced the defendant to the witness as

7

their source of crack cocaine in Norfolk, Virginia.

Another witness would have testified that the witness invited Tuten and Adbullah who resided in North Carolina to visit the witness in Virginia, but was unaware that shortly after their arrival, they began distributing crack cocaine in the Winchester and Front Royal, Virginia area. Upon Tuten and Abdullah's arrest, Tuten called the witness and told the witness that he did not tell the witness about distributing crack cocaine so that the witness would not be involved. The witness would have further testified that when visiting Abdullah at the Warren County Jail, Abdullah told the witness that he and Tuten had been distributing crack cocaine and did not tell the witness so that the witness would not be involved.

Another witness would have testified that on or about February 22, 2005, the witness drove to pick up a "softball size" unknown quantity of crack cocaine from the defendant in Norfolk and returned to Front Royal, while the defendant and Tuten followed in the defendant's vehicle. Once in Front Royal, the witness stated that Tuten and the defendant took possession of the "softball size" unknown quantity of crack cocaine.

Lastly, the government would have proved beyond a reasonable doubt that the defendant had no applicable defense to the charges against her.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences

8

of her plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment and adjudge her guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. A sentencing hearing hereby is scheduled for October 31, 2005 at 10:00 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within

9

10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

August 10, 2005
Date